Slip Op. 18-17

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MOEN INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Jennifer Choe-Groves, Judge <br><br> Court No. 15-00145 |

OPINION

[Granting Plaintiff's motion for summary judgment and denying Defendant's cross-motion for summary judgment with respect to the classification of certain models of toilet paper holders.]

Dated: March 7, 2018

William Randolph Rucker and Mollie D. Sitkowski, Drinker Biddle & Reath, LLP, of Chicago, IL, argued for Plaintiff Moen Inc.

Jamie L. Shookman, Trial Attorney, Commercial Litigation Branch, U.S. Department of Justice, of New York, N.Y., argued for Defendant United States. With her on the brief were Chad A. Readler, Acting Assistant Attorney General, and Amy M. Rubin, Assistant Director, International Trade Field Office. Of counsel on the brief was Sheryl A. French, Attorney, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

      Choe-Groves, Judge: This case addresses the proper classification of various models of toilet paper holders under the Harmonized Tariff Schedule of the United States ("HTSUS").[1] Before the court are cross-motions for summary judgment. See Pl.'s Mot. Summ. J., July 27, 2017, ECF No. 25; Mem. L. Supp. Pl.'s Mot. Summ. J., July 27, 2017, ECF No. 25 ("Pl.'s Br.");

---

[1] Although Plaintiff imported its entries between 2013 and 2014, all citations to the HTSUS are to the 2013 version. The relevant provisions and accompanying notes are identical to the 2014 version.

Def.'s Cross-Mot. Summ. J., Aug. 28, 2017, ECF No. 28; Mem. Opp'n Pl.'s Mot. Summ. J. & Supp. Def.'s Cross-Mot. Summ. J., Aug. 28, 2017, ECF No. 28 ("Def.'s Br."). Both parties filed timely responses. See Pl.'s Resp. Def.'s Cross-Mot. Summ. J., Sept. 27, 2017, ECF No. 31; Mem. L. Further Supp. Def.'s Cross-Mot. Summ. J., Oct. 11, 2017, ECF No. 32. The court held oral argument in this matter on December 13, 2017. See Oral Argument, Dec. 13, 2017, ECF No. 40.

Moen Inc. ("Plaintiff" or "Moen") argues that U.S. Customs and Border Protection ("Customs") improperly denied its protests challenging the classification of its subject merchandise. See Pl.'s Br. 1. Plaintiff contends that all of its toilet paper holders are entitled to duty-free treatment because the products are classifiable under HTSUS subheading 8302.50.00, which encompasses "[b]ase metal mountings," including "hat-racks, hat pegs, brackets and similar fixtures, and parts thereof." See id. at 2. The United States ("Defendant" or "Government") maintains that Customs properly classified the imported toilet paper holders under HTSUS subheading 7907.00.10, which covers "[o]ther articles of zinc" including "[t]oilet and sanitary wares." See Def.'s Br. 1. The Government argues, in the alternative, that Moen's "Sienna" product should be classified under HTSUS subheading 7324.90.00, which encompasses other products, including parts, of "[s]anitary ware and parts thereof, of iron or steel." See id. at 1–2.

For the reasons discussed below, the court grants Plaintiff's motion for summary judgment and denies Defendant's cross-motion for summary judgment with respect to the classification of the subject imports of toilet paper holders, which are classifiable under HTSUS subheading 8302.50.00 and will receive duty-free treatment.

**UNDISPUTED FACTS**

As required by USCIT Rule 56.3, Plaintiff and Defendant submitted separate statements of material facts and responses thereto. See Pl.'s Statement of Material Facts Not in Issue, July 27, 2017, ECF No. 25 ("Pl.'s Facts"); Def.'s Resp. to Pl.'s Statement of Material Facts Not in Issue, Aug. 28, 2017, ECF No. 28-1 ("Def.'s Facts Resp."); Def.'s Statement of Additional Undisputed Material Facts, Aug. 28, 2017, ECF No. 28-2 ("Def.'s Facts"); Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts, Sept. 27, 2017, ECF No. 31 ("Pl.'s Facts Resp."). The following facts are not in dispute.

A. **Jurisdictional and Procedural Facts**

Plaintiff imported the subject toilet paper holders into the United States at the Port of Los Angeles in California between December 2013 and March 2014. Pl.'s Facts ¶ 2; Def.'s Facts Resp. ¶ 2. The entries were liquidated by Customs. Pl.'s Facts ¶ 3; Def.'s Facts Resp. ¶ 3. Customs classified the merchandise under HTSUS subheading 7907.00.10, dutiable at 3% *ad valorem*. Pl.'s Facts ¶ 7; Def.'s Facts Resp. ¶ 7.

Plaintiff filed timely protests contesting the classification of its imports and seeking duty-free treatment of its merchandise, which Customs denied. Pl.'s Facts ¶ 3; Def.'s Facts Resp. ¶ 3. Plaintiff paid all liquidated duties and fees according to Customs' classification of the merchandise. Pl.'s Facts ¶ 4; Def.'s Facts Resp. ¶ 4. Thereafter, Plaintiff commenced this action. See Summons, May 13, 2015, ECF No. 1; Compl., July 31, 2015, ECF No. 7.

Court No. 15-00145                                                                                                    Page 4

### B. Facts Regarding the Imported Toilet Paper Holders

There are twenty-three different product models at issue with the following stock keeping unit ("SKU") numbers and names:

- YB8808BN 90 degree brushed nickel pivoting paper holder;
- YB0408BN Align brushed nickel paper holder;
- YB0408CH Align brushed chrome paper holder;
- YB0409BN Align brushed nickel paper holder;
- YB0409CH Align chrome paper holder;
- DN7908BN Ashville brushed nickel pivoting paper holder;
- YB2208BN Brantford brushed nickel spring loaded paper holder;
- YB2208CH Brantford chrome spring loaded paper holder;
- YB2208ORB Brantford oil rubbed bronze spring loaded paper holder;
- YB2808BN Eva brushed nickel European paper holder;
- YB2808CH Eva chrome European paper holder;
- YB2808ORB Eva oil rubbed bronze European paper holder;
- YB9208BN Fina brushed nickel pivoting paper holder;
- YB5408BN Kingsley brushed nickel pivoting paper holder;
- YB5408CH Kingsley chrome pivoting paper holder;
- YB5408ORB Kingsley oil rubbed bronze pivoting paper holder;
- DN8308BN Retreat brushed nickel pivoting paper holder;
- DN8308CH Retreat chrome pivoting paper holder;
- DN4408CH Vale chrome pivoting paper holder;
- DN4408ORB Vale oil rubbed bronze pivoting paper holder;
- DN4908BK Sienna matte black European paper holder;
- DN6808BN Sage brushed nickel spring loaded paper holder; and
- DN6808ORB Sage oil rubbed bronze spring loaded paper holder.

Pl.'s Facts ¶ 8; Def.'s Facts Resp. ¶ 8. The paper holders come in various styles and finishes. Pl.'s Facts ¶ 11; Def.'s Facts Resp. ¶ 11. Most of the products are made primarily of zinc. Pl.'s Facts ¶ 24; Def.'s Facts Resp. ¶ 24. One product, the Sienna matte black European paper holder,

SKU DN4908BK, is made primarily of steel.[2] Pl.'s Facts ¶ 25; Def.'s Facts Resp. ¶ 25. Zinc and steel are both base metals. Pl.'s Facts ¶ 27; Def.'s Facts Resp. ¶ 27.

All of the subject paper holders are designed to be mounted on a wall and used to hang a roll of toilet paper. Pl.'s Facts ¶¶ 10, 22; Def.'s Facts Resp. ¶¶ 10, 22. Moen distinguishes the models into three types: pivoting, European ("Euro"), and spring-loaded. Pl.'s Facts ¶ 11; Def.'s Facts Resp. ¶ 11. The pivoting paper holders have an arm that holds a toilet paper roll and a post that either pivots for ease of changing out the roll, or has an attached pivoting head that performs this role. Def.'s Facts ¶ 4; Pl.'s Facts Resp. ¶ 4. The Euro paper holders have an arm that holds a toilet paper roll, which may swivel for ease of use. Def.'s Facts ¶ 5; Pl.'s Facts Resp. ¶ 5. The spring-loaded paper holders have a spring-loaded tube that fits between two mounted posts. Def.'s Facts ¶ 6; Pl.'s Facts Resp. ¶ 6.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (2012)[3] and 19 U.S.C. § 1515 (2012).[4] The court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT R. 56(a). To raise a genuine issue of material fact, a party cannot rest upon mere

---

[2] Defendant avers that some cited testimony in the record indicates that Moen's Sienna model is made primarily of steel, while other evidence states that the product is made of wrought iron. Def.'s Facts Resp. ¶ 25. Defendant correctly notes that whether the Sienna model is made of steel or iron is not material to this dispute because HTSUS subheading 7324.90.00 encompasses both metals. Id. Plaintiff clarified at oral argument that its Sienna product is made primarily of steel. See Oral Argument at 0:46:55–0:47:27, Dec. 13, 2017, ECF No. 40.

[3] Further citations to Title 28 of the U.S. Code are to the 2012 edition.

[4] Further citations to Title 19 of the U.S. Code are to the 2012 edition.

allegations or denials and must point to sufficient supporting evidence for the claimed factual dispute to require resolution of the differing versions of the truth at trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986); Processed Plastics Co. v. United States, 473 F.3d 1164, 1170 (Fed. Cir. 2006); Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd., 731 F.2d 831, 835–36 (Fed. Cir. 1984).

A two-step process guides the court in determining the correct classification of merchandise.  First, the court ascertains the proper meaning of the terms in the tariff provision.  See Schlumberger Tech. Corp. v. United States, 845 F.3d 1158, 1162 (Fed. Cir. 2017) (citing Sigma-Tau HealthScience, Inc. v. United States, 838 F.3d 1272, 1276 (Fed. Cir. 2016)).  Second, the court determines whether the merchandise at issue falls within the parameters of the tariff provision.  See id.  The former is a question of law and the latter is a question of fact.  See id.  "[W]hen there is no dispute as to the nature of the merchandise, then the two-step classification analysis 'collapses entirely into a question of law.'"  Link Snacks, Inc. v. United States, 742 F.3d 962, 965–66 (Fed. Cir. 2014) (quoting Cummins Inc. v. United States, 454 F.3d 1361, 1363 (Fed. Cir. 2006)).

The court reviews classification cases *de novo*.  See 28 U.S.C. § 2640(a)(1).  Customs is afforded a statutory presumption of correctness in classifying merchandise under the HTSUS, see 28 U.S.C. § 2639(a)(1), but this presumption does not apply to pure questions of law.  See Universal Elecs. Inc. v. United States, 112 F.3d 488, 492 (Fed. Cir. 1997).  The court has "an independent responsibility to decide the legal issue of the proper meaning and scope of HTSUS terms," Warner-Lambert Co. v. United States, 407 F.3d 1207, 1209 (Fed. Cir. 2005) (citing Rocknel Fastener, Inc. v. United States, 267 F.3d 1354, 1358 (Fed. Cir. 2001)), and therefore

must determine "whether the government's classification is correct, both independently and in comparison with the importer's alternative." Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984).

## DISCUSSION

### A. Legal Framework

The classification of merchandise under the HTSUS is governed by the General Rules of Interpretation ("GRIs") and, if applicable, the Additional U.S. Rules of Interpretation, which are both applied in numerical order. BenQ Am. Corp. v. United States, 646 F.3d 1371, 1376 (Fed. Cir. 2011) (citing N. Am. Processing Co. v. United States, 236 F.3d 695, 698 (Fed. Cir. 2001)). GRI 1 instructs that, "for legal purposes, classification shall be determined according to the terms of the headings and any [relevant] section or chapter notes." GRI 1. "Absent contrary legislative intent, HTSUS terms are to be 'construed [according] to their common and popular meaning.'" Baxter Healthcare Corp. of P.R. v. United States, 182 F.3d 1333, 1337 (Fed. Cir. 1999) (quoting Marubeni Am. Corp. v. United States, 35 F.3d 530, 533 (Fed. Cir. 1994)).

In construing the terms of the headings, "[a] court may rely upon its own understanding of the terms used and may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (citing Baxter Healthcare Corp. of P.R., 182 F.3d at 1337). The court may also consult the Harmonized Commodity Description and Coding System's Explanatory Notes ("Explanatory Notes"), which "are not legally binding or dispositive," Kahrs Intern., Inc. v. United States, 713 F.3d 640, 645 (Fed. Cir. 2013), but "provide a commentary on the scope of each heading of the Harmonized System . . . and are generally indicative of proper interpretation of the various

provisions."[5] H.R. Rep. No. 100–576, 549 (1988), reprinted in 1988 U.S.C.C.A.N. 1547, 1582; see also E.T. Horn Co. v. United States, 367 F.3d 1326, 1329 (Fed. Cir. 2004) (citing Len-Ron Mfg. Co. v. United States, 334 F.3d 1304, 1309 (Fed. Cir. 2003)).  Tariff terms are defined according to the language of the headings, the relevant section and chapter notes, the Explanatory Notes, available lexicographic sources, and other reliable sources of information.

### B. Analysis of the Terms Under HTSUS 8302.50.00

The court must first ascertain the proper meaning and scope of the terms under HTSUS subheading 8302.50.00 before determining whether Plaintiff's products are classified under that provision.  See Schlumberger Tech. Corp., 845 F.3d at 1162 (citing Sigma-Tau HealthScience, Inc., 838 F.3d at 1276).  HTSUS subheading 8302.50.00 reads as follows:

> 8302: Base metal mountings, fittings and similar articles suitable for furniture, doors, staircases, windows, blinds, coachwork, saddlery, trunks, chests, caskets or the like; base metal hat-racks, hat-pegs, brackets and similar fixtures; castors with mountings of base metal; automatic door closers of base metal; and base metal parts thereof:
>
> > 8302.50.00 Hat-racks, hat pegs, brackets and similar fixtures, and parts thereof………………………..…………………………………..Free

Subheading 8302.50.00, HTSUS.

The court must assess whether HTSUS heading 8302 is an *eo nomine* provision or a use provision at the outset, as that distinction guides the analysis.  See Schlumberger Tech Corp., 845 F.3d at 1164.  An *eo nomine* provision describes articles by specific names, while a use provision characterizes products based on their principal or actual use.  See id.; see also R.T. Foods, Inc. v. United States, 757 F.3d 1349, 1354 (Fed. Cir. 2014).  Heading 8302 is an *eo*

---

[5] All citations to the Explanatory Notes are to the 2013 version.  The relevant portions are identical to the 2014 version.

*nomine* classification provision because it names specific products. Because the provision is *eo nomine*, the court's analysis begins with the heading's terms. See Schlumberger Tech Corp., 757 F.3d at 1164 (citation omitted). Pursuant to Plaintiff's proposed classification, the court's analysis will focus on the phrase "base metal hat-racks, hat-pegs, brackets and similar fixtures" within HTSUS heading 8302.

First, the court looks to the term "base metal." Chapter 82 is titled "miscellaneous articles of base metals." Chapter 82, HTSUS. All chapters at issue in this case—Chapters 73, 79, and 82—fall under Section XV of the HTSUS. Note 3 of Section XV clearly states that "base metals," as used throughout the section, include steel and zinc. Note 3 to Section XV, HTSUS. Because the controlling section note provides an unambiguous definition, the court concludes that the base metal fixtures referred to in HTSUS heading 8302 encompass products made of steel and zinc.

The phrase "similar fixtures" within HTSUS heading 8302 requires, however, a deeper analysis. It evokes the interpretive principle of *ejusdem generis*, which necessitates a "common-sense assessment of the particular list and what unifies the items in that list." Victoria's Secret Direct, LLC v. United States, 769 F.3d 1102, 1107 (Fed. Cir. 2014). The unifying principle "may be the presence of certain properties and the absence of others." Id. In other words, the shared characteristics may either be "affirmative features or limitations." Id. When analyzing whether a particular import falls within the scope of a list, "[t]he first step is to consider the common characteristics or unifying purpose of the listed exemplars in a heading." Id. (citing Avenues in Leather, Inc. v. United States, 178 F.3d 1241, 1244 (Fed. Cir. 1999)) (internal quotations omitted). The second step "is to consider the merchandise at issue with the identified

unifying characteristics (or purpose) in mind." Id. Classification is appropriate "only if the merchandise shares the heading's unifying characteristics." Id. If the product has "a more specific primary purpose that is inconsistent with the listed exemplars," then the classification fails. Id.

Plaintiff proffers multiple definitions of "hat rack," "hat-peg," and "bracket" in its briefing, see Pl.'s Br. 15, which Defendant does not dispute. See Def.'s Br. 14. A "hat rack" is defined as "a wooden framework with several projecting pegs that hangs against a wall and is used to hold hats and other articles of clothing." Hat Rack, Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/hat%20rack (last visited Mar. 2, 2018). A "hat-peg" is "a peg on which to hang a hat." Hat-Peg, Collins Dictionary, available at https://www.collinsdictionary.com/us/dictionary/english/hatpeg (last visited Mar. 2, 2018). A "bracket" is defined as either "an overhanging member that projects from a structure (such as a wall) and is usually designed to support a vertical load or to straighten an angle" or "a fixture (as for holding a lamp) projecting from a wall or column." Bracket, Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/bracket (last visited Mar. 2, 2018). The dictionary definitions imply that all of the listed exemplars in HTSUS heading 8302 are affixed to a wall and are used to hang, hold, or support another article.

Subsection (G) of the Explanatory Note for HTSUS heading 8302 provides further guidance for determining the unifying characteristics. It defines "similar fixtures" by listing exemplars "such as coat racks, towel racks, dish-cloth racks, brush racks, [and] key racks." Explanatory Note to Heading 8302, HTSUS. Based on this note, it is reasonable to conclude that the phrase "similar fixtures" references various types of racks. Merriam-Webster Dictionary

defines "rack" as "a framework, stand, or grating on or in which articles are placed." Rack, Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/rack (last visited Mar. 2, 2018). Oxford Dictionary similarly defines the word as "[a] framework, typically with rails, bars, hooks, or pegs, for holding or storing things." Rack, Oxford Dictionary, available at https://en.oxforddictionaries.com/definition/us/rack (last visited Mar. 2, 2018). Based on these definitions, "similar fixtures" refers to items that are mounted on a wall and hold other articles. The unifying characteristics of the listed products in HTSUS heading 8302 are, therefore, that they (1) are affixed to a wall and (2) hang, hold, or support other items.

HTSUS heading 8302, in sum, encompasses objects made of base metal that are affixed to a wall and are used to hang, hold, or support other items. The subject entries should share these three features to be classifiable within the scope of this heading.

### C. Classification of Plaintiff's Toilet Paper Holders

After the court ascertains the proper meaning of the terms in the tariff provision, the court must determine next whether Plaintiff's toilet paper holders fall within the parameters of the tariff provision. See Schlumberger Tech. Corp., 845 F.3d at 1162 (citing Sigma-Tau HealthScience, Inc., 838 F.3d at 1276).

Plaintiff argues that its toilet paper holders fall clearly within the scope of HTSUS heading 8302 because the products are made of base metal, are designed to be affixed to a wall, and are used to hold or hang an item. See Pl.'s Br. 18. The Government disagrees, contending that the toilet paper holders at issue are distinguishable from the other items encompassed by HTSUS heading 8302 based on the manner in which the products support other articles. See Def.'s Br. 15–16. The Government asserts that the imported toilet paper holders "do not support

articles in the same way" as the listed exemplars in HTSUS heading 8302 and Explanatory Note. Id. at 15. In the Government's view, the enumerated products "are used to hold discrete items that are not secured to the 'rack' and may be easily removed." Id. at 17. For instance, "hats are removed by simply grabbing the hat and pulling it away." Id. at 15. The subject holders contain, in contrast, a movable piece "that pivots, swivels, or springs open and shut" to secure a roll of toilet paper. Id. Defendant avers further that the listed items "hold articles that are removed and returned as an entirety," whereas the subject holders support a good that is dispensed sheet-by-sheet and then discarded. Id. at 15–16. The court treats Defendant's argument as a distinction that is not dispositive. Not all of Moen's products contain moveable pieces, as demonstrated by Plaintiff at oral argument. See Oral Argument, Dec. 13, 2017, ECF No. 40. The chrome Align paper holder (SKU YB0409CH) and the black Sienna paper holder (SKU DN4908BK), for example, do not have moveable pieces. They are simply affixed to the wall, and customers can easily secure a roll of toilet paper on them by sliding the roll onto the bar. Subsection (G) of the Explanatory Note for HTSUS heading 8302 does not distinguish between reusable and disposable goods. See Explanatory Note to Heading 8302, HTSUS. "Towel racks" could reasonably be a reference to both cloth towels and paper towels, which are dispensed sheet-by-sheet and discarded in a similar manner to toilet paper. The court finds unpersuasive the Government's attempt to distinguish the paper holders from the listed exemplars in HTSUS 8302.

Plaintiff has placed on the record undisputed material facts. The subject paper holders are made of base metal. See Pl.'s Facts ¶¶ 24–25, 27; Def.'s Facts Resp. ¶¶ 24–25, 27. The products are also designed to be mounted on a wall and are used to hold, hang, or support an

object, such as toilet paper. See Pl.'s Facts ¶ 22; Def.'s Facts Resp. ¶ 22. These facts establish that the subject paper holders fall under the scope of HTSUS heading 8302, and thus are classifiable under HTSUS subheading 8302.50.00.

### D. Defendant's Cross-Motion for Summary Judgment

The court now turns to Defendant's cross-motion for summary judgment. Defendant claims that the subject toilet paper holders are properly classified under HTSUS subheadings 7907.00.10 and 7324.90.00, depending on their constituent material. See Def.'s Br. 1–2. The full text of HTSUS subheading 7907.00.10 reads:

> 7907: Other articles of zinc:
>> 7907.00.10 Articles of a type used for household, table or kitchen use; toilet and sanitary wares; all of the foregoing and parts thereof of zinc………3%

Subheading 7907.00.10, HTSUS.

The Government concedes that one model of toilet paper holder, the Sienna, "was entered and liquidated incorrectly, as it is not an article of zinc." Def.'s Br. 2. Defendant asserts that the Sienna is classified properly under HTSUS subheading 7324.90.00 because it is made of iron or steel, and thus merits duty-free treatment.[6] See id. The full text of HTSUS subheading 7324.90.00 reads:

> 7324: Sanitary ware and parts thereof, of iron or steel:
>> 7324.90.00 Other, including parts…………………………….………......Free

Subheading 7324.90.00, HTSUS.

---

[6] The practical outcome of the Government's position is that Moen's Sienna model will receive duty-free treatment regardless of classification under HTSUS subheading 8302.50.00 or HTSUS subheading 7324.90.00. The court will consider the Government's legal arguments nevertheless with respect to HTSUS heading 7324.

As stated before, Section XV of the HTSUS encompasses Chapters 79 and 73. The Notes for Section XV provide authoritative guidance, therefore, when interpreting the heading terms contained therein. Note 2 explains, in relevant part, that "the articles of chapter 82 or 83 are excluded from chapters 72 to 76 and 78 to 81." Note 2 to Section XV, HTSUS. The Explanatory Notes for the Government's preferred classifications build further on this sentiment. The Explanatory Note for HTSUS heading 7907 states, "This heading covers all articles of zinc **other than** those . . . articles specified or included in Chapter 82 or 83 or more specifically covered elsewhere in this Nomenclature." Explanatory Note to Heading 7907, HTSUS. The Explanatory Note for HTSUS heading 7324 reads, "This heading comprises a wide range of iron or steel articles, **not more specifically covered** by other headings of the Nomenclature, used for sanitary purposes." Explanatory Note to Heading 7324, HTSUS. In sum, if the subject merchandise is classifiable within other categories of the tariff schedule, then it is excluded from HTSUS headings 7907 and 7324.

Because the court finds that Plaintiff's subject toilet paper holders fall under another tariff provision, HTSUS heading 8302, the merchandise cannot be classified under Defendant's preferred provisions, HTSUS headings 7907 and 7324.

## CONCLUSION

For the foregoing reasons, the court concludes that all twenty-three models of toilet paper holders are classifiable under HTSUS subheading 8302.50.00. Customs erred in classifying the entries under HTSUS subheading 7907.00.10. Plaintiff's motion for summary judgment is granted and Defendant's cross-motion for summary judgment is denied.

Judgment will be entered accordingly.

Court No. 15-00145 | Page 15

/s/   Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated: March 7, 2018
New York, New York